IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALLANORA THOMPSON | : | |
| | : | |
| v. | : | |
| | : | |
| UNUMPROVIDENT CORPORATION | : | |
| a/k/a UNUM LIFE INSURANCE | : | NO.: 02-CV-4593 |
| COMPANY OF AMERICA | : | |
| | : | |
| and | : | |
| | : | |
| ALL FIRST BANK | : | |
| a/k/a FIRST MARYLAND BANKCORP | : | |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLAIM FOR BAD FAITH DAMAGES SET FORTH IN HER FIRST AMENDED COMPLAINT**

Defendants, UnumProvident Corporation ("UnumProvident") and All First Bank ("All First"), by and through their counsel, Post & Schell, P.C., hereby move this Honorable Court to dismiss plaintiff's First Amended Complaint and in support thereof, aver as follows:

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

1. Plaintiff instituted this action on or about June 19, 2002 with the filing of a complaint in the Philadelphia Court of Common Pleas.

2. A Petition for Removal was filed with this Court on July 10, 2002.

3. Thereafter, defendants filed a Motion to Dismiss in response to plaintiff's complaint.

4. On August 19, 2002, Judge Padova issued an order granting defendants' motion, thereby dismissing the plaintiff's request for relief in the form of future benefits.

5. However, on August 27, 2002, counsel for all parties appeared before Judge Padova for a pre-trial conference. At this conference, plaintiff's counsel made an oral request for

an extension of time in which to file an amended complaint containing a count for bad faith damages pursuant to Pennsylvania's Bad Faith Statute, 42 Pa.C.S.A. §8371.

6. Judge Padova granted plaintiff one week in which she would be able to file such amended complaint, and also indicated that defendants would then be able to file a motion to dismiss pursuant to Federal Rule of Civil procedure 12(b)(6) in response to any such amended complaint.

7. On September 3, 2002, plaintiff's counsel filed a First Amended Complaint which includes a claim for bad faith under 42 Pa.C.S.A. §8371. See First Amended Complaint, attached as Exhibit "A."

8. Plaintiff claims that UnumProvident acted as a trustee for an employee welfare benefit plan provided to her by virtue of her employment with All First. See Exhibit "A."

9. In paragraph 4 of her first amended complaint, the plaintiff asserts that the benefit plan at issue is subject to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, et seq., ("ERISA"). See Exhibit "A."

10. Plaintiff asserts that she became totally disabled while in the employ of All First. See Exhibit "A."

11. Plaintiff further asserts that defendants have arbitrarily and capriciously failed to pay her long term disability benefits she claims she is owed under the ERISA plan. See Exhibit "A,' at ¶9.

## II. LEGAL STANDARDS

12. Paragraphs 1 through 11 are incorporated by reference as though set forth at length.

13. When deciding to dismiss a claim pursuant to Rule 12(b)(6), a court must consider the legal sufficiency of the complaint. Dismissal is appropriate if it is clear "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

14. The court assumes the truth of the plaintiff's allegations and draws all favorable inferences therefrom. See Rocks v. City of Philadelphia, 868 F.2d. 644, 645 (3d Cir. 1989). However, conclusory allegations that fail to give a defendant notice of the material elements of a claim are insufficient. See Sterling v. SEPTA, 897 F. Supp. 893, 895 (E.D. Pa. 1995).

15. The pleader must provide sufficient information to outline the elements of the claim, or to permit inferences to be drawn that these elements exist. See Kost v. Kozaciewicz, 1 F. 3d 176, 183 (3d Cir. 1993).

### III. LEGAL ARGUMENT

16. Paragraphs 1 through 15 are incorporated by reference as though set forth at length.

17. In paragraph 18 of the plaintiff's First Amended Complaint, she asserts that, "at all times relevant to this action, Defendants handled, processed, evaluated, assessed, and/or decided the entitlement of Allanora Thompson to benefits under the policy of insurance at issue unreasonably and in bad faith." See Exhibit "A."

18. Furthermore, in the "Wherefore" clause of her First Amended Complaint, the plaintiff seeks the following relief:

> WHEREFORE, Plaintiff ALLANORA THOMPSON demands judgment against Defendants, jointly and/or severally, in an amount in excess of Fifty Thousand Dollars ($50,000.00) together with interest, costs, and fees, plus such other relief as this Court deems just, including but not limited to, damages under 42 Pa.C.S.A. 8371.

See Exhibit "A."

19.     However, the disability policy at issue is a group disability plan issued to the plaintiff through her employer. See Exhibit "A." Employer-provided pension and welfare benefit plans are comprehensively regulated by ERISA.

20.     ERISA broadly preempts state causes of action as set forth in the pre-emption clause codified at 29 U.S.C. §1144(a).

21.     Specifically, ERISA preempts claims for relief pursuant to 42 Pa.C.S.A. §8371. See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987); Kirkhuff v. Lincoln Technical Institute, Civil Action No. 02-483 (E.D.Pa. September 6, 2002); Sprecher v. Aetna U.S. Healthcare, Inc., 2002 U.S. Dist. LEXIS 15571 (E.D.Pa. August 19, 2002).

22.     Accordingly, plaintiff's claim for bad faith damages pursuant to 42 Pa.C.S.A. §8371 is preempted by ERISA and should be dismissed.

- 5 -

WHEREFORE, defendants, UnumProvident Corporation and All First Bank, respectfully request this Honorable Court to enter an order dismissing the plaintiff's claim for bad faith in her First Amended Complaint and assessing attorneys' fees and costs.

        **Respectfully Submitted,**

        **POST & SCHELL, P.C.**

**By:** _____
        **RICHARD L. MCMONIGLE, JR., ESQ.**
        **I.D. # 33565**
        **WILLIAM S. FOX, ESQ.**
        **I.D. # 57207**
        **TRACEY N. KILCULLEN, ESQ.**
        **I.D. # 84006**
        **ATTORNEYS FOR DEFENDANTS,**
        **UNUMPROVIDENT CORPORATION**
        **AND ALL FIRST BANK**
        1800 J.F.K. Boulevard
        19th Floor
        Philadelphia, PA 19103
**Date:**_____        215-587-1000

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALLANORA THOMPSON : | |
| : | |
| v. : | |
| : | |
| UNUMPROVIDENT CORPORATION : | |
| a/k/a UNUM LIFE INSURANCE : | NO.: 02-CV-4593 |
| COMPANY OF AMERICA : | |
| : | |
| and : | |
| : | |
| ALL FIRST BANK : | |
| a/k/a FIRST MARYLAND BANKCORP : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS PLAINTIFF'S CLAIM FOR BAD FAITH DAMAGES SET FORTH
IN HER FIRST AMENDED COMPLAINT**

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff instituted this action on or about June 19, 2002 with the filing of a complaint in the Philadelphia Court of Common Pleas.    A Petition for Removal was filed with this Court on July 10, 2002.  Thereafter, defendants filed a Motion to Dismiss in response to plaintiff's complaint. On August 19, 2002, Judge Padova issued an order granting defendants' motion, thereby dismissing the plaintiff's request for relief in the form of future benefits.

However, on August 27, 2002, counsel for all parties appeared before Judge Padova for a pre-trial conference.  At this conference, plaintiff's counsel made an oral request for an extension of time in which to file an amended complaint containing a count for bad faith damages pursuant to Pennsylvania's Bad Faith Statute, 42 Pa.C.S.A. §8371.   Judge Padova granted plaintiff one week in which she would be able to file such amended complaint, and also indicated that defendants would then be able to file a motion to dismiss pursuant to Federal Rule of Civil procedure 12(b)(6) in response to any such amended complaint.

- 1 -

On September 3, 2002, plaintiff's counsel filed a First Amended Complaint which includes a claim for bad faith under 42 Pa.C.S.A. §8371. <u>See</u> First Amended Complaint, attached as Exhibit "A." Plaintiff claims that UnumProvident acted as a trustee for an employee welfare benefit plan provided to her by virtue of her employment with All First. <u>See</u> Exhibit "A." In paragraph 4 of her first amended complaint, the plaintiff asserts that the benefit plan at issue is subject to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, et seq., ("ERISA"). <u>See</u> Exhibit "A." Plaintiff asserts that she became totally disabled while in the employ of All First. <u>See</u> Exhibit "A." Plaintiff further asserts that defendants have arbitrarily and capriciously failed to pay her long term disability benefits she claims she is owed under the ERISA plan. <u>See</u> Exhibit "A,' at ¶9.

## II.     LEGAL STANDARDS

When deciding to dismiss a claim pursuant to Rule 12(b)(6), a court must consider the legal sufficiency of the complaint. Dismissal is appropriate if it is clear "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson,</u> 355 U.S. 41, 45-46 (1957). The court assumes the truth of the plaintiff's allegations and draws all favorable inferences therefrom. <u>See  Rocks v. City of Philadelphia,</u> 868 F.2d. 644, 645 (3d Cir. 1989). However, conclusory allegations that fail to give a defendant notice of the material elements of a claim are insufficient. <u>See Sterling v. SEPTA,</u> 897 F. Supp. 893, 895 (E.D. Pa. 1995). The pleader must provide sufficient information to outline the elements of the claim, or to permit inferences to be drawn that these elements exist. <u>See Kost v. Kozaciewicz,</u> 1 F. 3d 176, 183 (3d Cir. 1993).

III.  **LEGAL ARGUMENT**

    A.  **Plaintiff's Claim for Bad Faith Damages Pursuant to 42 Pa.C.S.A. §8371 Must be Dismissed as Such Claim is Preempted by ERISA.**

Plaintiff's state law bad faith claim under 42 Pa.C.S.A. §8371 is completely pre-empted by the exclusive civil enforcement remedies established in §502(a) of the ERISA statute. As a result, plaintiff's request for damages under 42 Pa.C.S.A. §8371 must be dismissed, with prejudice.

Fifteen years ago in Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987), the United States Supreme Court made it clear that ERISA comprehensively regulated the area of employee welfare benefit plans and that state law claims, including claims for bad faith against insurers, are preempted as a result. See id.; see also Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58 (1987). Following Pilot Life, the issue of preemption of state law claims relating to an employee welfare benefit plan had been well settled. However, a number of recent opinions on the issue, some of which initially appear conflicting, have been handed down from this Court. In the wake of these decisions, there appears to be increased confusion surrounding the effects of ERISA preemption of claims made under Pennsylvania's bad faith statute, 42 Pa.C.S.A. §8371. However, a closer examination of these opinions demonstrates that the issue remains as well settled as ever.

In July, Judge Newcomer issued an opinion in Rosenbaum v. UNUM Life Insurance Company of America, 2002 U.S. Dist. LEXIS 14155 (E.D.Pa. July 29, 2002), in which he permitted the coexistence of a claim made pursuant to ERISA and a claim for bad faith damages under 42 Pa.C.S.A. §8371. At first blush, the Rosenbaum opinion appears to support the viability of a plaintiff's bad faith claim on the ground that ERISA's savings clause protects a §8371 claim from pre-emption. As a result, plaintiffs such as Ms. Thompson, have attempted to

assert bad faith claims in conjunction with their claims for benefits under employee welfare benefit plans which are unquestionably subject to ERISA's comprehensive regulatory scheme. However, upon closer examination, the court's rationale in Rosenbaum demonstrates that the court only considered half of the argument, neglecting to consider ERISA's complete pre-emption of state law remedies, such as those found in §8371. Indeed, the Rosenbaum opinion's shortcomings are dramatically highlighted by the two most recent decisions from the Eastern District, each of which rejects the Rosenbaum decision's approach.

Less than one month after the Rosenbaum decision was issued, Judge Buckwalter weighed in on the issue. In Sprecher v. Aetna U.S. Healthcare, 2002 U.S. Dist. LEXIS 15571 (E.D. Pa., Aug. 19, 2002), Judge Buckwalter unequivocally held, "I respectfully disagree with the Rosenbaum decision and find that Pennsylvania's bad faith statute is preempted by ERISA." Id. at *8.

The Sprecher court began by discussing the McCarran-Ferguson test which determines whether a state law "regulates insurance" so as to fall under the protection of ERISA's savings clause. Under this test, courts consider three factors to determine whether the law or practice at issue fits within the "business of insurance" as that phrase is used in the McCarran-Ferguson Act, 15 U.S.C. §1011 et seq. The three factors are as follows: (1) whether the law or practice has the effect of transferring or spreading a policyholder's risk; (2) whether the law or practice is an integral part of the policy relationship between insurer and insured; and (3) whether the law or practice is limited to entities within the insurance industry. Sprecher v. Aetna U.S. Healthcare, 2002 U.S. Dist. LEXIS 15571 at *9.

The court found that the Pennsylvania bad faith statute does not satisfy the first McCarran-Ferguson factor, reasoning as follows:

> The availability of punitive damages and interest penalties to a policyholder whose insurer has improperly processed a claim for benefits does not allocate risk typical of medical insurance. At most, this may cause the insurer to raise premiums, which it would then pass on to the policyholder. However, an insurer's method for recuperating losses resulting from unsuccessful litigation does not alter the risk bearing arrangement of medical insurance: that the insurer will pay covered medical expenses, at any cost, and the insured will pay the stipulated premium. Furthermore, ERISA already accounts for the risk that a policyholder's claim will be improperly handled through its exclusive remedial scheme, without necessitating resort to state laws allowing alternative remedies. 29 U.S.C. § 1132(a). I find that Pennsylvania's bad faith statute does not serve to spread the policyholder's risk.

Id. at *12-13.

As to the second McCarran-Ferguson factor (whether the law or practice is an integral part of the policy relationship between insurer and insured), the court, citing UNUM Life Ins. Co. v. Ward, 526 U.S. 358, 374 (1999), observed that this factor "requires that the state statute in some manner control the terms of the insurance relationship by changing the bargain between insurer and insured." Id. at *12-13. The court found that this factor was not met because the Pennsylvania bad faith statute does not control or change the terms of the contract between the insurer and the insured. The court reasoned, in pertinent part, as follows:

> Insurers have the obligation to act in good faith. However, a state statute providing a remedy for breach of this obligation does not have the effect of creating a new, mandatory contract term. Pennsylvania's bad faith statute creates an opportunity for a policyholder, whose claim has been improperly handled, to seek punitive damages and interest penalties. . . .[This] does not change the bargain between the insurer and the insured that the insurer will act in good faith.
> . . .
> Pennsylvania's bad faith statute does not define the terms of the relationship between the insurer and the insured, nor does it translate the relationship under the agreement into concrete terms of specific obligation or freedom from duty.

Id. at *15-16 (citing Pilot Life, 481 U.S. at 51, and Rush Prudential HMO v. Moran, 122 S. Ct. 2151, 2163 (2002)).  Thus, the court held, two of the three McCarran-Ferguson factors were not met, so that it could not be concluded that § 8371 regulated insurance under those criteria.

More importantly, Judge Buckwalter's holding that Pennsylvania's bad faith statute is not saved from preemption was based upon another, independent ground, which was completely ignored in Rosenbaum: conflict/categorical preemption.  The court, citing the landmark case of Pilot Life, observed that the Pennsylvania bad faith statute, with its provisions for punitive damages and interest penalties, was more akin to an "alternative remedy", which is categorically preempted by ERISA.  Id. at *17.  The Sprecher court stated that "Pilot Life established that it was Congress' clearly expressed intent that the civil enforcement provisions of ERISA, 29 U.S.C. § 1132(a), be the exclusive vehicle for actions by ERISA-plan participants and beneficiaries."  Id. at *18, citing Pilot Life, 481 U.S. at 52.  The preemption analysis employed by the Sprecher court is directly applicable to the matter at bar:

> Even if I were to hold Pennsylvania's bad faith statute was a law which regulates insurance within the meaning of ERISA's saving clause (which I do not), the Pilot Life rule carves out a limited exception to the saving clause when state insurance laws allow plan participants to obtain remedies under state law that Congress rejected in ERISA.  I believe preemption of Pennsylvania's bad faith statute is proper under this analysis as well.
>
> Congress intended ERISA §502(a), 29 U.S.C. 1132(a), to be the **exclusive remedy for rights guaranteed under ERISA**. Therefore, even a state law "regulating insurance" will be preempted if it provides a separate vehicle to assert a claim for benefits outside of, or in addition to, ERISA's remedial scheme or enlarges that claim beyond the benefits available in any action brought under §1132(a).
>
> The question therefore, is whether Pennsylvania's bad faith statute provides such a vehicle.  I conclude that it clearly does. ERISA's enforcement scheme authorizes an action to recover benefits, obtain a declaratory judgment that one is entitled to

> benefits, and to enjoin an improper refusal to pay benefits. 29 U.S.C. §1132(a). ERISA's civil enforcement provision also authorizes suits to seek removal of the fiduciary as well as claims for attorney's fees. In contrast, punitive damages and interest penalties are not provided for under ERISA. Thus, Pennsylvania's bad faith statute, authorizing punitive damages and interest penalties, would significantly expand the potential scope of ultimate liability imposed upon employers by the ERISA scheme. In short, the relief ultimately available would not be what ERISA authorizes in a suit for benefits under §1132(a). <u>Therefore, because Pennsylvania's bad faith statute provides a form of ultimate relief in a judicial forum that adds to the judicial remedies provided by ERISA, it is incompatible with ERISA's exclusive enforcement scheme and falls within Pilot Life's categorical preemption.</u>

<u>Sprecher</u>, at *18-20, citing <u>Pilot Life</u>, 481 U.S. at 54 (emphasis added). The doctrine of conflict/categorical preemption was wholly ignored by the court in <u>Rosenbaum</u>.

The <u>Sprecher</u> court dismissed the plaintiff's bad faith claim, holding that (1) the Pennsylvania bad faith statute does not regulate insurance within the meaning of ERISA's saving clause and (2) there is a clear expression of congressional intent that ERISA's civil enforcement scheme be exclusive. <u>Id.</u> at *20.

On September 6, 2002, Judge Harvey Bartle was asked to consider whether a claim for bad faith under §8371 could be successfully asserted with a claim for benefits under an ERISA plan. After considering the holdings of both <u>Rosenbaum</u> and <u>Sprecher,</u> Judge Bartle ultimately agreed with the logic of the <u>Sprecher</u> court.

In <u>Kirkhuff v. Lincoln Technical Institute, Inc.,</u> Slip Opinion, Civil Action No. 02-483 (E.D.Pa. September 6, 2002), the court accepted the <u>Sprecher</u> court's position that ERISA's civil enforcement remedies are intended to be exclusive. Judge Bartle also looked to the McCarran-Ferguson factors to evaluate whether Pennsylvania's bad faith statute, a law directed toward the insurance industry, is exempt from ERISA preemption. The <u>Kirkhuff</u> court focused on the

- 7 -

second factor, "whether the practice [or law] is an integral part of the policy relationship between the insurer and the insured." See id. at *4-5. Judge Bartle found "the reasoning in Sprecher persuasive that the bad faith statute does not constitute an integral part of the relationship between the insurer and insured." Id. at *5.

However, and perhaps most importantly, the Kirkhuff court found its most compelling reason in favor of preemption in the same place the Sprecher court did. Judge Bartle astutely recognized, as did Judge Buckwalter, that "even if the statute would otherwise fit within the savings clause, preemption still wins the day if 'state law permits claimants to obtain remedies that Congress rejected in ERISA.'" Id. (Citations omitted.) Looking to the Supreme Court's analysis in Rush, Judge Bartle commented that "any state law that 'added to the judicial remedies provided by ERISA . . .violated ERISA's policy of inducing employers to offer benefits by assuring a predictable set of liabilities, under uniform standards or primary conduct and a uniform regime of ultimate remedial orders and awards when a violation has occurred." Id. at *5-6, quoting, Rush, 122 S. Ct. at 2166.

Employing these principles, the court reaches the undeniable conclusion that "[u]nlike the Pennsylvania bad faith statute, ERISA nowhere authorizes a participant or beneficiary to obtain punitive damages or interest 3% above prime." Id. at *6. ERISA's remedies are exclusive, and the remedies set forth in §8371 are not encompassed within those exclusive remedies. Therefore, §8371 "conflicts with the carefully crafted and exclusive remedial scheme of ERISA and is pre-empted." Kirkhuff, at *8-9.

After comparing each of these three recent decisions, it becomes apparent that the most telling distinction between the Judges' opinions rests with Judge Buckwalter's and Judge

Bartle's consideration of the Congressionally-mandated exclusivity of ERISA's remedies -- a topic conspicuous by its absence in the Rosenbaum opinion. Judge Buckwalter noted, correctly, that Section 502(a) of ERISA has always been recognized as providing the exclusive remedy for rights guaranteed under ERISA, dating back to the landmark decision in Pilot Life. In that case, the Supreme Court expressly held that Section 502(a)'s "comprehensive civil enforcement scheme" was exclusive:

> In sum, the detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. . . . The deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive.

Pilot Life, 481 U.S. at 54 (emphasis added).

It is well-settled that ERISA preempts any state law that "conflicts with the provisions of ERISA or operates to frustrate its objectives." Boggs v. Boggs, 520 U.S. 833, 841 (1997). See also Egelhoff v. Egelhoff, 532 U.S. 141 (2001) (state statute that mandates the beneficiary of certain employee benefits on the death of the participant is preempted where it directly conflicts with ERISA's requirements that plans be administered, and benefits be paid, in accordance with plan documents). This conflict preemption applies even to state laws, such as insurance regulatory laws, that would otherwise be saved from preemption under the express preemption provisions of ERISA § 514. See John Hancock Life Ins. Co. v. Harris Trust & Savings Bank, 510 U.S. 86, 99 (1993) ("State law governing insurance generally is not displaced, but 'where

[that] law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress,' federal preemption occurs.").

The exclusivity of ERISA's civil enforcement scheme is an important reflection of Congressional intent to forcefully deal with the abuses of employee benefit plans which were rampant at the time of ERISA's enactment. ERISA was designed to afford employers with uniformity and predictability concerning employee benefit plans. Decisions such as Rosenbaum threaten the uniformity and predictability of the law and, in the long run, threaten the continued existence and expansion of employee benefit plans.

Instantly, plaintiff's seeks to effectively enlarge the remedies that are otherwise available under ERISA, § 502(a). Plaintiff is attempting to use the state law bad faith claim to obtain punitive damages, which the Supreme Court and Third Circuit have repeatedly held are not available under ERISA. Massachusetts Life Ins. Co. v. Russell, 473 U.S. 134, 142 (1985) (extra-contractual damages not available under ERISA); Pryzbowski v. U.S. Healthcare, 245 F.3d 266, 275 (3d Cir. 2001) ("We conclude that the District Court did not err in holding that plaintiff's bad faith claim is completely preempted.); Wolk v. UNUM Life Ins. Co., 186 F.3d 352, 354 n3 and 358 (3d Cir. 1999); Garner v. Capital Blue Cross, 859 F. Supp. 145, 148-49 (M.D. Pa. 1994), affirmed 52 F.3d 314 (3d Cir. 1994); Pane v. RCA Corp., 868 F.2d 631, 635 (3d Cir. 1989) (punitive damages not available under ERISA).

## IV.   CONCLUSION

In summary, in accordance with the authority outlined above, plaintiff's bad faith claim remains preempted by ERISA. As noted, Pennsylvania bad faith statute does not meet two of the three McCarran-Ferguson factors. More importantly, regardless of whether § 8371 is viewed as regulating insurance, it is preempted because it conflicts with ERISA's exclusive civil

enforcement/remedies scheme. Accordingly, the defendants' Motion to Dismiss plaintiff's claim for bad faith damages pursuant to 42 Pa.C.S.A. §8371 should be granted.

**Respectfully Submitted,**

**POST & SCHELL, P.C.**

**By:** _____
**RICHARD L. MCMONIGLE, JR., ESQ.**
**I.D. #33565**
**WILLIAM S. FOX, ESQ.**
**I.D. #57207**
**TRACEY N. KILCULLEN, ESQ.**
**I.D. #84006**
**ATTORNEYS FOR DEFENDANTS,**
**UNUMPROVIDENT CORPORATION**
**AND ALL FIRST BANK**
1800 J.F.K. Boulevard
19th Floor
Philadelphia, PA 19103
**Date:**_____   215-587-1000

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALLANORA THOMPSON | : | |
| | : | |
| v. | : | |
| | : | |
| UNUMPROVIDENT CORPORATION | : | |
| a/k/a UNUM LIFE INSURANCE | : | NO.: 02-CV-4593 |
| COMPANY OF AMERICA | : | |
| | : | |
| and | : | |
| | : | |
| ALL FIRST BANK | : | |
| a/k/a FIRST MARYLAND BANKCORP | : | |

### ORDER

    AND NOW, this _____ day of _____, 2002, upon consideration of Defendants', UnumProvident Corporation and All First Bank, Motion to Dismiss Plaintiff's Claim for Bad Faith Damages, and Memorandum of Law in Support thereof, it is hereby ORDERED and DECREED that said Motion is GRANTED, and plaintiff's claim for bad faith damages pursuant to 42 Pa.C.S.A. §8371 is dismissed WITH PREJUDICE.

                                                                                BY THE COURT

                                                                                _____

                                                                                                                     J.

Case 2:02-cv-04593-JP   Document 12   Filed 09/19/2002   Page 18 of 18